RICHARD E. MAHONEY, SR., ADMINISTRATOR (ESTATE OF RICHARD E. MAHONEY, JR.) ET AL. *v.* BRIAN LENSINK, COMMISSIONER OF THE DEPARTMENT OF MENTAL RETARDATION, ET AL.
(6331)

DUPONT, C. J., BORDEN and NORCOTT, Js.

Argued September 14—decision released November 29, 1988

*William B. Wynne,* for the appellants (plaintiffs).

*Andrea Gaines,* assistant attorney general, with whom were *Henri Alexandre,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellees (defendants).

DUPONT, C. J. The plaintiffs, Richard E. Mahoney, individually and in his capacity as administrator of his son's estate, and Barbara Mahoney, individually, brought this action against the commissioners of mental health, state police and mental retardation.[1] They

---

[1] This appeal was withdrawn as to the defendant Brian Lensink, commissioner of mental retardation. The plaintiffs have alleged that the com-

alleged that the death of their son, while a patient at Norwich Hospital, was caused by the defendants' negligent, wanton, and willful misconduct, and that the defendants deprived their son of his personal, property and civil rights in violation of General Statutes § 17-206b, and of his right to receive humane and dignified treatment in violation of General Statutes § 17-206c. In addition to claims made on behalf of the estate, the plaintiffs sought, as individuals, to recover for funeral and probate expenses incurred, as well as for the loss of consortium they claim to have suffered as a result of their son's death. The defendants moved to dismiss, asserting that the plaintiffs are barred by the doctrine of sovereign immunity from bringing the action against the state or its commissioners, and that, accordingly, the court lacked subject matter jurisdiction. The motion to dismiss was granted and this appeal followed.

The amended complaint, to which the defendants' motion to dismiss is addressed, contains twelve counts and alleges that the plaintiffs' decedent, Richard Mahoney, Jr., while a voluntary admission patient at Norwich Hospital, was killed when he jumped from an oil tank reserve located on the grounds of the hospital. The plaintiffs' appeal concerns counts ten, eleven and twelve of the amended complaint. Count ten alleges that the defendants violated the decedent's rights in violation of General Statutes §§ 17-206b and 17-206c. Counts eleven and twelve allege that as a result of the violation of these statutes the plaintiffs have incurred funeral and probate expenses and have suffered a loss of consortium with their son. The statutory claims are based on various allegations as to the defendants' conduct, including failure to supervise the decedent, fail-

missioner of state police is responsible for certain security personnel at Norwich Hospital and, as such, he is included as a defendant in the complaint.

ure to take suicide precautions, failure to provide proper counseling and medication, and failure to report timely the decedent missing. These counts allege that General Statutes § 17-206k is the basis for the court's jurisdiction.

The case before us is one of first impression. The controlling issue is whether the legislature intended General Statutes § 17-206k to waive the sovereign immunity of the state and impose direct liability for violations of General Statutes §§ 17-206b and 17-206c on the state and its commissioners, and, if so, whether the allegations of the complaint sufficiently allege a violation of §§ 17-206b and 17-206c.

The trial court, in granting the defendants' motion to dismiss, found that § 17-206k does not constitute legislative consent to a suit for damages against the state or its commissioners. The plaintiffs' claim is that § 17-206k operates as a waiver of the state's sovereign immunity and permits state mental health facility patients aggrieved by violations of General Statutes §§ 17-206b and 17-206c to bring an action directly against the state or its commissioners, rather than pursuing a claim to the claims commissioner.[2]

"The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed 'by the use of express terms or by force of a necessary implication.' " *Duguay* v. *Hopkins,* 191 Conn. 222, 228, 464 A.2d 45 (1983), quoting *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290 (1972). The defense of sovereign immunity is not allowed where

---

[2] General Statutes § 4-142 provides in pertinent part: "There shall be a claims commissioner who shall hear and determine all claims against the state except . . . (2) claims upon which suit otherwise is authorized by law." Section 4-160 (a) provides in pertinent part: "When the claims commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person could be liable."

the legislature has consented to being sued. *Skinner* v. *Angliker,* 15 Conn. App. 297, 300, 544 A.2d 246 (1988), cert. granted on other grounds, 209 Conn. 807, 548 A.2d 438 (1988).

In analyzing the statute at issue, well established rules of statutory construction control. "It is a fundamental principle of statutory construction that statutes are to be construed so that they carry out the intent of the legislature." *State* v. *Campbell,* 180 Conn. 557, 561, 429 A.2d 960 (1980). In construing a statute, this court will consider the language of the statute, its legislative history and previous judicial construction. *Norwich* v. *Silverberg,* 200 Conn. 367, 371, 511 A.2d 336 (1986). Since there is neither a judicial construction[3] nor any pertinent legislative history of § 17-206k,[4] we are left with the language of the statute in determining whether it was intended to act as a waiver to the state's sovereign immunity.

Section 17-206k provides that "[a]ny person aggrieved by a violation of sections 17-206a to 17-206j, inclusive, may petition the superior court within whose jurisdiction the person is or resides for appropriate relief, including temporary and permanent injunctions, or may bring a civil action for damages." The plaintiff

[3] In *Gutierrez* v. *Thorne,* 13 Conn. App. 493, 537 A.2d 527 (1988), the plaintiff brought suit against the commissioner of mental retardation for injuries sustained by the plaintiff while she was a client in a department program. Although the plaintiff's complaint included a count based on General Statutes § 17-206c, the plaintiff did not allege jurisdiction pursuant to § 17-206k. The defendant conceded that § 17-206c provided a direct cause of action against him and that sovereign immunity was waived by virtue of General Statutes § 19a-24, which authorizes civil actions for damages against the commissioner of health services and the commissioner of mental retardation. As to the substance of the § 17-206c count, the trial court and the plaintiff treated the § 17-206c claims as essentially identical to the plaintiff's negligence claims. We expressed no opinion as to the correctness of that position. *Gutierrez* v. *Thorne,* supra, 502 n.4.

[4] See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1971 Sess., p. 640–44.

claims to have been aggrieved by violations of §§ 17-206b and 17-206c. Section 17-206b provides, in pertinent part, that "[n]o patient hospitalized or treated in any public or private facility for the treatment of the mentally disordered shall be deprived of any personal, property or civil rights, including the right to vote, hold or convey property, and contract, except in accordance with due process of law, and unless he has been declared incompetent pursuant to Chapter 779." Section 17-206c provides in pertinent part: "Every patient treated in any facility for treatment of the mentally disordered shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. Each patient shall be treated in accordance with a specialized treatment plan suited to his disorder."

The language "any public or private facility" and "every patient treated in any facility" indicates that the legislature intended patients of state, municipal and private mental hospitals to be guarantied the rights provided by §§ 17-206b and 17-206c.

The defendants do not contest the conclusion that patients of state mental health facilities are entitled to the rights afforded by §§ 17-206b and 17-206c. They argue, however, that state patients aggrieved by violations of §§ 17-206b and 17-206c are required to pursue their claims in a different forum than private mental hospital patients, that is, through the commissioner of claims. See footnote 2, supra.

It is a basic rule of statutory construction that a statute is to be construed as a whole and each part reconciled. *United Aircraft Corporation* v. *Fusari*, 163 Conn. 401, 411, 311 A.2d 65 (1972). Section 17-206k must be construed in light of the rights for which it provides remedies. Section 17-206k provides remedies for "any person aggrieved by a violation of §§ 17-206a to 17-206j,

inclusive." The remedy is by petition to the Superior Court and includes "a civil action for damages." Patients in state mental health facilities are included among the class of individuals potentially aggrieved by violations of §§ 17-206b and 17-206c, the sections on which the plaintiffs' claims rely. Section 17-206k does not distinguish between remedies available to state facility patients and those available to private facility patients. No reference is made to chapter 53 of the General Statutes and its provisions for prior authorization by the claims commissioner for suits against the state. *Duguay* v. *Hopkins,* supra, 230. We conclude that § 17-206k was intended by the legislature to authorize direct civil actions against the state or its commissioners by patients of state mental health facilities aggrieved by violations of §§ 17-206b and 17-206c.

Having concluded that § 17-206k permits direct civil actions against the state, we must determine whether the allegations of the complaint sufficiently allege a cause of action for violations of §§ 17-206b and 17-206c. When the state waives its sovereign immunity by statute, "a party attempting to sue under the legislative exception must come clearly within its provisions . . . ." *Berger, Lehman Associates, Inc.* v. *State,* 178 Conn. 352, 356, 422 A.2d 268 (1979). The defendants contend that the plaintiffs have failed to allege facts sufficient to state a cause of action under either § 17-206b or § 17-206c and that, accordingly, the defendants' motion to dismiss was properly granted.

"A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original.) *Baskin's Appeal from Probate,* 194 Conn. 635, 640, 484 A.2d 934 (1984). "The motion to dismiss like a 'motion to erase admits all facts which are well pleaded, invokes the existing record and must

be decided on that alone.' *Perrys, Inc.* v. *Waterbury Redevelopment Agency,* 157 Conn. 122, 124, 249 A.2d 256 (1968)." *Barde* v. *Board of Trustees,* 207 Conn. 59, 62, 539 A.2d 1000 (1988). Accordingly, in evaluating the sufficiency of the plaintiffs' complaint, we presume the validity of the allegations contained therein.

The plaintiffs' complaint does not distinguish between §§ 17-206b and 17-206c, but instead, claims that the defendants' alleged misconduct amounts to a violation of both statutes. We find it necessary, however, to distinguish between the statutes in determining the sufficiency of the plaintiffs' claims.

Section 17-206b provides that "[n]o patient hospitalized or treated in any public or private facility for the treatment of the mentally disordered shall be deprived of any personal, property or civil rights, including the right to vote, hold or convey property, and contract, except in accordance with due process of law, and unless he has been declared incompetent pursuant to chapter 779. Any finding of incompetency shall specifically state which civil or personal rights the patient is incompetent to exercise."

The statute guaranties that a mental health facility patient cannot be deprived of the opportunity to exercise certain rights, such as the right to vote, contract, or hold property, unless due process has been afforded and unless the patient has been declared incompetent. Thus, the statute requires that due process be afforded when suspending a patient's rights, and mandates that he or she may not be deprived of those rights without a finding that a patient is in fact incompetent to exercise them.

The rights to which the plaintiffs claim the decedent was entitled are not susceptible to the due process guaranties of § 17-206b. Section 17-206b guaranties that hospitalization or treatment in a mental health

facility may not serve as the basis for the deprivation of a right that a patient may have held absent hospitalization or treatment. See comment, "The Mentally Ill in Connecticut—A Survey," 6 Conn. L. Rev. 303, 330 (1973–74). The rights to which the plaintiffs claim the decedent was entitled, that is, proper counseling, medication and suicide precautions, are not rights held absent hospitalization, but instead arise, if at all, as a *result* of his hospitalization.

We conclude from the language of the statute that the "personal, property or civil rights" contemplated by § 17-206b consist of those rights that a patient might conceivably be unable to exercise due to incompetence, and, thus, that might properly be suspended if due process is provided. We, therefore, find that the plaintiff's complaint fails to state a cause of action for violation of the decedent's rights under § 17-206b.

The plaintiffs' allegations, however, fare better when analyzed under § 17-206c. The language of the statute indicates generally that a patient in a mental health facility is entitled to humane and dignified treatment, and specifically that a patient is entitled to a treatment plan tailored to his particular disorder.

The defendants argue that the guaranties of humane and dignified treatment provided by § 17-206c contemplate only the protection of personal dignity and privacy, such as the right to refuse medication and other treatment. The statute, however, clearly provides that a patient is entitled to a specialized treatment plan tailored to his particular disorder. Thus, under § 17-206c, a patient has a positive right to treatment, rather than simply a negative right to refuse it.

The plaintiff has alleged that the decedent suffered from a mental illness that included suicidal tendencies, and that the defendants failed to provide proper counseling, medication, supervision or suicide precautions,

so as to prevent the decedent from acting on his suicidal tendencies. Viewing the allegations broadly, as we must on a motion to dismiss, the plaintiffs' complaint can be read to allege that the defendants failed to provide the decedent with a treatment plan suited to his mental disorder.

The defendants also contend that the plaintiffs' claims are based solely in negligence, and, as such, do not amount to a cause to action under § 17-206c. The defendants rely on federal cases decided under 42 U.S.C. § 1983, which authorizes a civil action for deprivations of "rights, privileges, or immunities secured by the Constitution and laws" under color of state law or custom. Federal courts have recognized, to varying extents, that a failure to provide treatment and personal safety to patients institutionalized in state mental health facilities may amount to a violation of a patient's rights under 42 U.S.C. § 1983. See, e.g., *Harper* v. *Cserr,* 544 F.2d 1121 (1st Cir. 1976); *Wyatt* v. *Aderholt,* 503 F.2d 1305 (5th Cir. 1974); *Philipp* v. *Carey,* 517 F. Supp. 513, (N.D.N.Y. 1981). In formulating standards by which to evaluate claims based on a right to treatment, federal courts have held that a "mere negligent failure to afford proper treatment" does not amount to a cause of action under 42 U.S.C. § 1983. *Harper* v. *Cserr,* supra, 1122. The defendants contend that § 17-206c similarly requires allegations rising above negligence.

The defendants' reliance on § 1983 cases, however, is misplaced. The right to treatment recognized by federal courts is grounded in substantive liberty interests secured by the federal due process clause. *Philipp* v. *Carey,* supra, 516. The United States Supreme Court has held, in the context of § 1983 cases, that acts of negligence do not violate an individual's rights under the due process clause of the United States constitution. *Daniels* v. *Williams,* 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson* v. *Cannon,* 474 U.S.

344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986). Thus, the limits on the right to treatment recognized by the federal courts are based on constitutional considerations.

Section 17-206c, however, is not tied to constitutional rights. The statute simply gives a statutory right to humane and dignified treatment to patients treated in mental health facilities. Therefore, the right to humane and dignified treatment provided by § 17-206c is not subject to the limits imposed on the right to treatment as recognized under the federal constitution.[5]

Section 17-206c creates a new tort liability based upon a specified course of conduct that is not dependent upon common law negligence. See *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 348–49, 493 A.2d 184 (1985). The allegations that the defendants violated the terms of the statute stand alone and suffice to state a cause of action. *Gionfriddo* v. *Gartenhaus Cafe,* 15 Conn. App. 392, 394 n.1, 546 A.2d 284 (1988), cert. granted on other grounds, 209 Conn. 809, 548 A.2d 437 (1988). Therefore, an evaluation of claims made under § 17-206c does not require a determination that the plaintiffs have alleged negligent, reckless, wanton or intentional conduct on the part of the defendants.

Viewing the allegations of the complaint and reasonable inferences that can be drawn therefrom, we conclude that the allegations of count ten, which solely

---

[5] Even if a violation of the right to humane and dignified treatment under § 17-206c were said to require something more than negligent conduct on the part of a defendant, facts similar to these alleged here by the plaintiff, that is, failure to restrict or control a patient so as to prevent suicide, have been held to be sufficient to allege such a degree of wanton neglect so as to state a cause of action for violation of a patient's rights under 42 U.S.C. § 1983. See *Harper* v. *Cserr,* 544 F.2d 1121 (1st Cir. 1976); see also *Kowal* v. *Hofher,* 181 Conn. 355, 436 A.2d 1 (1980).

relate to claims on behalf of the decedent's estate,[6] are sufficient to state a cause of action under § 17-206c. These allegations, therefore, come within the sovereign immunity waiver provisions of § 17-206k.

The plaintiffs' individual claims for funeral expenses and loss of consortium, as alleged in counts eleven and twelve, however, require a different analysis.

A legislative waiver of sovereign immunity waives the state's immunity only as to the actions specified. See *Duguay* v. *Hopkins,* supra, 229. A party who wishes to sue under a legislative waiver of sovereign immunity must come within its provisions. Id., 232. The plaintiffs, as individuals, do not belong to the class of persons to whom rights are afforded under §§ 17-206b and 17-206c, the sections on which their claims are based, and therefore are not members of the class authorized to bring suit under § 17-206k. Although funeral expenses may be obtainable as an element of damages sought by the decedent's estate, the plaintiffs' individual claim for funeral expenses against the defendant commissioners is not authorized by § 17-206k and is thus barred by the doctrine of sovereign immunity.

The plaintiffs' claim for loss of consortium fails for the same reason as does their claim for funeral expenses. Moreover, the plaintiff's consortium claim is for loss of filial, rather than spousal consortium. The right to consortium is said to arise out of the civil contract of marriage and as such, does not extend to the parent-child relationship.[7] See *Hopson* v. *St. Mary's Hospital,* 176 Conn. 485, 487, 408 A.2d 260 (1979).

---

[6] The decedent's statutory right of action under § 17-206k survives his death by virtue of General Statutes § 52-599, which provides in pertinent part: "(a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person." Thus, the decedent's administrator is a proper party to bring an action pursuant to § 17-206k.

[7] No appellate court case has yet addressed squarely the issue of whether, under any circumstances, a cause of action for the loss of filial consortium lies.

Finally, a claim for loss of consortium exists only as to antemortem loss of consortium. *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 523 A.2d 1301 (1987). The plaintiffs' claim for loss of consortium is framed in terms of postmortem loss of consortium. Thus, even if an action for loss of filial consortium were said to exist, and even if the plaintiffs individually acquired a cause of action pursuant to § 17-206c, the decision in *Ladd* forecloses the plaintiffs' claim.

The trial court's decision to dismiss the plaintiffs' complaint was error, in part, as to count ten, but not error as to counts eleven and twelve.

There is error in part, the judgment of dismissal as to the allegations of count ten relating to a violation of General Statutes § 17-206c is set aside and the case is remanded to the trial court for further proceedings in accordance with law.

In this opinion the other judges concurred.